## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER JENKINS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 1:17-cv-2608 |
| v. | ) ) **CLASS ACTION COMPLAINT FOR** |
| ASTORIA FINANCIAL CORPORATION, RALPH F. PALLESCHI, MONTE N. REDMAN, JOHN R. CHRIN, JOHN J. CORRADO, ROBERT GIAMBRONE, GERARD C. KEEGAN, BRIAN M. LEENEY, PATRICIA M. NAZEMETZ, and STERLING BANCORP, | ) **VIOLATIONS OF SECTIONS 14(a) AND** ) **20(a) OF THE SECURITIES** ) **EXCHANGE ACT OF 1934** ) ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Christopher Jenkins ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Astoria Financial Corporation ("Astoria" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Astoria, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Astoria and Sterling Bancorp ("Sterling").

2.      On March 6, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to

receive 0.875 shares of Sterling common stock for each share of Astoria stock they own (the "Merger Consideration").

3.     On May 1, 2017, in order to convince Astoria shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for the Company and Sterling; (ii) the valuation analyses performed by the Company's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), and Sterling's financial advisors RBC Capital Markets, LLC ("RBCCM") and Citigroup Global Markets Inc. ("Citigroup"), in support of their respective fairness opinions; (iii) the fees Sandler O'Neill stands to receive in connection with the Proposed Merger; and (iv) conflicts of interest faced by Astoria's directors.

6.     The special meeting of Astoria shareholders to vote on the Proposed Merger is scheduled for June 13, 2017.  It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and

Regulation G, 17 C.F.R. § 244.100.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Astoria shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Astoria maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, an Astoria shareholder.

12.     Defendant Astoria is incorporated in Delaware and maintains its principal executive offices in Lake Success, New York.  The Company is a unitary savings and loan holding company. The Company's principal business is the operation of its subsidiary, Astoria Bank. Astoria Bank's primary business is attracting retail deposits from the general public and businesses, and investing those deposits, funds generated from operations, principal repayments on loans, and securities and borrowings, primarily in multi-family and commercial real estate mortgage loans, residential mortgage loans, and mortgage-backed securities.

13.     Individual Defendant Ralph F. Palleschi ("Palleschi") has served as a director of Astoria since 1996 and as Chairman of the Board since June 2012. According  to  the Company's website, Palleschi is Chair of the Nominating and Corporate Governance Committee and a member of both the Audit Committee and the Compensation Committee.

14.     Individual Defendant Monte N. Redman ("Redman") has served as a director, President, and Chief Executive Officer ("CEO") of Astoria since July 2011.

15.     Individual Defendant John R. Chrin ("Chrin") has served as a director of Astoria since December 2009. According to the Company's website, Chrin is Chair of the Audit Committee and a member of the Compensation Committee.

16.     Individual Defendant John J. Corrado ("Corrado") has served as a director of Astoria since September 2012. According to the Company's website, Corrado is a member of the Audit Committee and the Compensation Committee.

17.     Individual Defendant Robert Giambrone ("Giambrone") has served as a director of Astoria since July 2015. According to the Company's website, Giambrone is a member of the Audit Committee and the Nominating and Corporate Governance Committee.

18.     Individual Defendant Gerard C. Keegan ("Keegan") has served as a director of Astoria since January 2012.

19.     Individual Defendant Brian M. Leeney ("Leeney") has served as a director of Astoria since August 2009. According to the Company's website, Leeney is the Chair of the Enterprise and Risk Management Committee and is a member of both the Nominating and Corporate Governance Committee and the Compensation Committee.

20.     Individual Defendant Patricia M. Nazemetz ("Nazemetz") has served as a director of Astoria since January 2013. According to the Company's website, Nazemetz is the Chair of the Compensation Committee and a member of both the Audit Committee and the Nominating and Corporate Governance Committee.

21.     Defendant Sterling is a Delaware corporation, a party to the Merger Agreement, and maintains its principal executive office at 400 Rella Boulevard, Montebello, New York 10901.  Sterling was directly responsible for the preparation of certain sections of the Proxy statement and permitted the use of its name in the Proxy to solicit Astoria's shareholders to vote in favor of the Proposed Merger.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Astoria (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of March 3, 2017, there were approximately 101.2 million shares of Astoria common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Astoria will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.      The Merger Consideration Appears Inadequate in Light of Astoria's Recent Financial Performance and Growth Prospects

24.      The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  Indeed, on April 26, 2017, the Company reported first-quarter earnings of $14.4 million and profits of 12 cents per share.  The Company also posted revenue of $121.6 million in the quarter, and its adjusted revenue was $92 million.

25.      Further, the Company's shares have increased 11 percent since the beginning of the year, and 34 percent in the last 12 months.

26.      Additionally, in its fourth quarter investor presentation, the Company noted that it

has "23 consecutive years of core profitability as a public company," a "clean, well-capitalized balance sheet," and is "well positioned in its core Long Island market." The Company also stated that its net interest margin increased every year between 2012 and 2016.[1]

27.     In sum, it appears that Astoria is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Merger Agreement's Deal Protection Provisions Deter Superior Offers

28.     The Individual Defendants have also agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Astoria.

29.     First, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Astoria shareholders. The Merger Agreement states that the Company and the Individual Defendants shall not (i) initiate, solicit, knowingly encourage, or knowingly facilitate inquiries or proposals with respect to any acquisition proposal, (ii) engage or participate in any negotiations with any person concerning any acquisition proposal, or (iii) provide any confidential or nonpublic information or data to, or have or participate in any discussions with, any person relating to, any acquisition proposal except to notify a person that has made or, to the knowledge

---

[1] Investor Presentation Fourth Quarter Ended December 31, 2016, Astoria Financial Corporation, http://ir.astoriabank.com/phoenix.zhtml?c=94317&p=irol-presentations.

of Astoria, is making any inquiries with respect to, or is considering making, an acquisition proposal, of the existence of Astoria's obligations with respect to such acquisition proposals under the merger agreement.

30.     Additionally, the Merger Agreement grants Sterling recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to negotiate with Astoria, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

31.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Sterling can easily foreclose a competing bid.  As a result, these provisions unreasonably favor Sterling, to the detriment of Astoria's public shareholders.

32.     Lastly, the Merger Agreement provides that Astoria must pay Sterling a termination fee of $75.7 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Astoria shareholders with a superior offer.

33.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

34.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Astoria's shareholders receive all

material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

### III.   The Materially Incomplete and Misleading Proxy

35.    On May 1, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

36.    First, the Proxy fails to provide material information concerning the Company's and Sterling's financial projections.  Specifically, the Proxy provides non-GAAP (generally accepted accounting principles) projections, net income and earnings per share, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

37.    When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

38.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chairwoman, Mary

Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Astoria and Sterling included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

39.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3] *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

40.    In order to make the projections for Astoria and Sterling included on pages 53 and 73 of the Proxy materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

41.    At the very least, the Company and Sterling must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, the Defendants acknowledge that disclosing non-GAAP projections may mislead shareholders in the Proxy: "… Astoria stockholders are cautioned not to place unwarranted reliance on such information," Proxy 73.

42.    The Proxy also fails to disclose the after-tax free cash flows and distributable cash flows that Astoria and Sterling are forecasted to generate.  Such projections were specifically based on each company's forecasts and were relied upon by the bankers in connection with their valuation analyses.  Proxy 57-58, 66-68.    Under sound corporate finance theory, Astoria shareholders would find such cash flow projections material in assessing the fairness of the Merger Consideration.  The omission of the cash flow projections renders the projections set forth in the Proxy materially incomplete and misleading.  If a proxy discloses projections, such projections must be complete and accurate.

_____

[4] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

43.    The Proxy further fails to quantify the "projected synergies" expected to be realized from the Proposed Merger; instead the Proxy vaguely refers to such synergies and notes that each company's banker utilized the synergies projections in connection with their respective valuation analyses.    Given that the projected value of the synergies are one of the most significant benefits of the Proposed Merger, Astoria's shareholders would undoutbeldy find such information material.    The omission of the projected value of the synergies renders the vague references to the "synergies" on pages 50, 54, 55, 57, 59, 66, and 71 of the Proxy incomplete and therefore misleading.

44.    The Proxy also omits certain key inputs necessary for shareholders to assess the valuation analyses performed by both Sandler O'Neill and RRBCCM in support of their fairness opinions, rendering the summaries of such analyses in the Proxy incomplete and misleading.

45.    With respect to Sandler O'Neill's Net Present Value Analysis of Sterling and Astoria, the Proxy fails to disclose Sandler O'Neill's basis for selecting price-to-2021 earnings per share multiples ranging from 12.0x to 22.0x and price-to-December 31, 2021 tangible book value per share multiples ranging from 120% to 320% to derive the Company's terminal values. Further, although the Proxy discloses that Sandler O'Neill selected discount rates ranging from 7.0% to 10.0%, which were "chosen to reflect different assumptions regarding required rates of return of holders or prospective buyers of Sterling common stock," the Proxy fails to disclose those underlying assumptions and inputs to derive the discount rates.

46.    With respect to Sandler O'Neill's Pro Forma Merger Analysis, the Proxy indicates that, in arriving to its conclusion in this analysis, Sandler O'Neill utilized "certain assumptions related to transaction expenses, purchase accounting adjustments, an estimated dividend payout ratio, as well as certain cost savings and balance sheet restructuring

assumptions, as provided by the senior management of Sterling." The Proxy, however, fails to disclose these assumptions, which form the basis of Sandler O'Neill's analysis.

47.     With respect to RBCCM's Discounted Cash Flow Analysis, the Proxy fails to disclose the inputs and assumptions underlying the calculation of the discount rate range of 9.0% to 11.0% used by RBCCM.

48.     These key inputs are material to Astoria shareholders, and their omission renders the summary of RBCCM's Discounted Cash Flow Analysis incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions. *Id.* at 1577-78.

49.     With respect to both Sandler O'Neill's and RBCCM's Selected Companies Analysis and Selected Transactions Analysis, the Proxy fails to disclose the individual multiples

calculated for each company and transaction utilized.  The omission of the individual multiples for each company and transaction renders the summary of these analyses and the implied per share equity value reference ranges materially misleading.  A fair summary of a Selected Companies Analysis and Selected Transactions Analysis requires the disclosure of the individual multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

50.     The Proxy also fails to disclose the amount of Sandler O'Neill's fee that is contingent upon the completion of the Proposed Merger, which is material for stockholders to determine whether Sandler O'Neill's fairness opinion was improperly influenced by its desire to ensure that the Proposed Merger is consummated.  The assertion that "a substantial portion" of Sandler O'Neill's fee is contingent upon the completion of the Proposed Merger is inadequate to allow stockholders to properly assess whether Sandler O'Neill's analysis was improperly influenced by its desire to ensure that the Proposed Merger is consummated.  Indeed, determining what constitutes a "substantial portion" is highly subjective and open to various interpretations.  Thus, without specifying the percentage or dollar value of the fee that is contingent, stockholders are unable to determine whether the percentage of the fee that is contingent exceeds both common practice and common understanding of what constitutes "substantial."  It is imperative for stockholders to be able to understand what factors might influence a financial advisor's analytical efforts, and the omission of such information renders the vague reference to the contingent nature of Sandler O'Neill's fee incomplete and therefore misleading.

51.     Lastly, while the Proxy notes that "Astoria's directors and executive officers have interests in the merger that are different from, or in addition to, the interests of Astoria stockholders generally," Proxy 84, Defendants have failed to quantify the payments and benefits that all of Astoria's directors stand to receive if the Proposed Merger is consummated.  Instead, the Proxy only quantifies the expected payments the Company's named executive officers are expected to receive.  *Id*. at 84, 87-88.  However, the Company's directors will each have their restricted stock units immediately vest upon the consummation of the Proposed Merger, and Astoria shareholders would undoutbeldy find it material to know the value of each of the Individual Defendants' restricted stock upon the consummation of the Prosed Merger.  The Proxy only provides this information for the Company's named executive officers however, not all of the Individual Defendants.  *Id*. at 87-88. Given that each of the Individual Defendants has approved the Proposed Merger and recommended that the Company's shareholders vote in favor of the transaction, it is imperative that the Company's shareholders fully understand the financial interests and conflicts of interest each of the Individual Defendants faced.  The omission of this information renders the section describing the "interests of Astoria's directors and executive officers in the merger," and the "treatment of Astoria equity awards" section of the Proxy on page 84 incomplete and therefore misleading.

52.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

55.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

56.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not*

*misleading*." 17 C.F.R. § 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

57.  The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

58.  Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company and Sterling; (ii) the valuation analyses performed by each company's financial advisor; (iii) the fees Sandler O'Neill stands to receive in connection with the Proposed Merger; and (iv) conflicts of interest faced by Astoria's directors.

59.  In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

60.  The Individual Defendants knew or were negligent in not knowing that the Proxy

is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Sandler O'Neill reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Sandler O'Neill as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and Sterling and knew or should have known of the conflicts faced by Sandler O'Neill each of the Company's directors that have been inadequately disclosed in the Proxy.

61.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review Sandler O'Neill's analyses in connection with their receipt of the fairness opinion, question Sandler O'Neill as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

62.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

63.     Astoria is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

64.     Further, Sterling was directly responsible for the preparation of certain sections of the Proxy, including the incomplete and misleading sections summarizing its projections and the valuation analyses performed by its bankers, and was negligent in allowing the Proxy to be disseminated to Astoria's shareholders with incomplete and misleading information contained therein.  Sterling permitted the use of its name in the Proxy to solicit Astoria's shareholders to vote in favor of the Proposed Merger.

65.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

66.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Astoria within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Astoria, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

71.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

74.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 2, 2017

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  /s/ *Nadeem Faruqi*
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue, 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
    jwilson@faruqilaw.com

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
E-mail: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Christopher Jenkins ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Astoria Financial Corporation ("Astoria") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Faruqi & Faruqi, LLP and Monteverde & Associates PC and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Astoria securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 2nd day of April 2017.

_____
Christopher Jenkins

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 08/24/15 | 100 |
|  |  |  |
|  |  |  |
|  |  |  |